IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| SHARON COMBS and<br>MELINDA WOOD, et al.<br>    Plaintiffs, | : <br> : <br> : <br> : | |
| vs. | : | Case No. 1:14-cv-00172-C |
| ORIGINAL OYSTER HOUSE, INC.,<br>    Defendant. | : <br> : <br> : | |

## JOINT MOTION TO APPROVE SETTLEMENT
## AS TO CERTAIN PLAINTIFFS CLAIMS

Pursuant to *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352 (11th Cir. 1982), twenty-six (26) of the thirty-two (32) Named and Opt-in Plaintiffs named herein and Defendant Original Oyster House, Inc. request the Court to approve the settlements of those 26 Plaintiffs' claims in this *Fair Labor Standards Act* lawsuit.[1]

**Plaintiffs' Statement of Claims**

This action is brought pursuant to the FLSA, 29 U.S.C. §201 et seq. and, specifically, the collective action provision of the Act found at §216(b), for equitable and declaratory relief and to remedy violations of the wage provisions of the FLSA by Defendant, which have deprived named Plaintiffs, and all other similarly situated tipped employees employed by Defendant, of their lawful wages. On information and belief, Defendant's actions in failing to compensate Plaintiffs and all other similarly situated servers, lead servers, and bartenders in violation of the FLSA, were willful. This action is brought to recover unpaid compensation, in the form of

---

[1] Named Plaintiff Sharon Combs and other opt-in plaintiffs have not accepted the offers made by Defendant. Accordingly, the Court's 16(b) scheduling conference concerning plaintiffs' motion for conditional certification should remain as scheduled.

unpaid wages and overtime, owed to the Plaintiffs, and all similarly tipped employees employed by Defendant.

The named Plaintiffs were employed at Defendant's Gulf Shores, Alabama restaurant at times during the three-year period prior to the lawsuit's filing on April 14, 2014 and primarily worked as servers but at times worked as bartenders. The Opt-in Plaintiffs also worked as servers, lead servers, and/or bartenders at the Defendant's Gulf Shores location and Causeway location. During their employment with Defendant, Plaintiffs were paid a reduced minimum (less than $7.25/hr) wage and required to participate in an invalid tip pool and/or tip sharing program including non-tipped employees. Defendant claimed a "tip credit" for the difference between the reduced minimum wage it paid Plaintiffs and the required hourly minimum wage. Plaintiffs asserts several wage-hour related claims in this action which relate to (i) non-tip producing work, (ii) unpaid time due to clock-in time clock adjustments, (iii) required "tip pools" or "tip sharing" involving non-tipped employees including oyster shuckers and expeditors, (iv) unpaid time during which the tip pool was administered, (v) unpaid overtime, (vi) misapplication of the tip credit and (vii) misappropriation of servers' tip earnings.

**Defendant's Statement of Defenses**

Defendant admits that, before January 20, 2014, oyster shuckers at times received 25¢ from a servers' tips or lead servers' tips per order of raw oysters sold by the server or lead server during a shift, but Defendant denies that any oyster shucker received any portion of any tips from any server or lead server who did not sell raw oysters during the shift. Defendant further admits that, before January 20, 2014, at times expeditors received a small percentage of servers' tips generated from food and non-alcoholic beverage sales. Defendant avers that the 25¢ per dozen

raw oyster portion of tips provided to oyster shuckers were never "pooled" with the portion of tips provided to expeditors. Defendant further avers that oyster shuckers were never paid from the "food sales pool" of tip money shared with expeditors. Defendant contends there were shifts during the relevant period in which individual Plaintiffs had no raw oyster sales and/or no food and non-alcoholic beverage sales and thus were not required to share tips with oyster shuckers and/or expeditors on such shifts. Defendant denies that any Plaintiff worked more than 20% of his or her time during any workweek on duties which were not directly tip-generating. Defendant denies any Plaintiffs were uncompensated with overtime pay for time worked in excess of 40 hours per week. Defendant contends the FLSA does not provide for recovery as damages any tips which were required to be shared with oyster shuckers and expeditors. Defendant contends the statute of limitations bars some or all of Plaintiffs' claims.

**Settlement**

1.  Defendant filed Notice of Service of Offers of Judgments[2] on June 12 [Doc.30], June 19 [Doc.36], June 26 [Doc.37], and July 1 [Doc.37]. Because Defendant is and was not in a financial position to immediately pay the offered amounts if all or substantially all of the Plaintiffs accepted the offers, Defendant specified "payment plans" in the offers as to when the judgments would be satisfied, if accepted. Defendant and Plaintiffs entered in tolling

---

[2] The parties dispute whether these qualify as valid Offers of Judgment Pursuant to Federal Rules of Civil Procedure 68. Plaintiffs contend the inclusion of different "payment plans," as well as limitation to "tip credit" theory of relief, and the two year statute limitation period as opposed to including the three year period and "tip retention" created a contingency and failed to offer "complete relief" thus rendering it a settlement offer and not a Rule 68 offer of judgment. Plaintiff further contends that Defendant's "Offer of Judgments" are not valid under Rule 68 because they do not provide complete relief as Plaintiffs have sought declaratory relief in their complaint and Defendant's offers include the following, "This judgment is a compromise of disputed claims and is not to be deemed as an admission of fault or liability by Defendant." Defendant maintains the offers were Rule 68 Offers of Judgment and would seek to enforce the rule's costs-shifting provisions if Plaintiffs were awarded any less than the offered amounts.

agreements keeping all of these offers from expiring until noon on July 15. Parties negotiated payment periods and issued revised offers on July 14 and July 15. Copies of the revised offers are filed with this motion. The amounts offered and accepted as well as the applicable payment schedule for each Plaintiff are set out below:

| Last | First | Judgment Amount | # Monthly Payments to Satisfy Judgment |
|---|---|---|---|
| Barnes | Shelli | $1,000.00 | 1 |
| Boyette | Richard | $11,875.00 | 4 |
| Brown | Matthew | $4,525.00 | 2 |
| Carson | Ashley | $26,205.00 | 4 |
| Compton | Cecilly | $12,950.00 | 4 |
| Dees | Kory | $1,950.00 | 1 |
| Harden | Crystal | $22,920.00 | 4 |
| Howland | Jennifer | $10,050.00 | 4 |
| Jackson | Letitia | $11,675.00 | 4 |
| Knight | Leon | $2,735.00 | 1 |
| Lanham | Nancy | $26,100.00 | 4 |
| Lipscomb | Marshall | $14,775.00 | 4 |
| Middleton | Jason | $22,225.00 | 4 |
| Sanford | Jude | $21,945.00 | 4 |
| Sinclair | Ken | $16,400.00 | 4 |
| Smith | Stephen | $4,200.00 | 2 |
| Souza | Danielle | $29,000.00 | 2 |
| Stewart | Kelly | $20,500.00 | 4 |
| Suleski | Matthew | $5,025.00 | 2 |
| Toth | Zakkary | $6,500.00 | 3 |
| Trammell | Karen | $10,300.00 | 4 |
| Traudt | Ryan | $22,510.00 | 4 |
| Watson | Michael | $13,150.00 | 4 |
| Whitehead | Lauren | $16,750.00 | 4 |
| Wood | Melinda | $23,740.00 | 2 |
| Yeend | Joshua | $26,375.00 | 4 |

2. "In reviewing a settlement of an FLSA private claim, the court must scrutinize the settlement for fairness and determine that the settlement is a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Stalnaker v. Novar Corp.*, 293 F. Supp 2d 1260, 1263 (M.D. Ala. 2003) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353, 1355

(11th Cir. 1982)) (internal quotations omitted.). The Eleventh Circuit held that "'[i]f a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute[,] ... the district court [may] approve the settlement in order to promote the policy of encouraging settlement of litigation.'" *Id*. (quoting *Lynn's Food Stores*, 679 F.2d at 1354).

3. In an effort to resolve the lawsuit, and to assist Plaintiffs' counsel evaluate Defendant's offers, Defendant provided payroll records called "Employee Details Reports" which provided the total number of hours worked per shift per plaintiff, plus the hourly rate applicable to the shift, during a period beginning on the date two years before the opt in date for each plaintiff and ending on January 19, 2014.[3] Defendant also provided records showing the termination date of any Plaintiff who was not a current employee. Defendant also provided records ("Paycheck History Reports") showing how much each Plaintiff was paid on each payday during the two year period leading up to their opt in date and how many hours such pay reflected, including both regular hours and overtime hours. Defendant also provided Plaintiffs' counsel with records of food sales and raw oyster sales from which the amounts of the "tip outs" to food expeditors could be estimated for the two years prior to the opt in date for each Plaintiff ("Server Productivity Reports").

4. Using the "Employee Details Reports," the parties were able to calculate the total number of regular and overtime hours for which Defendant paid employees a rate below minimum wage and then multiply those hours by the relevant "tip differential" or "tip credit" rate, i.e., $5.12/hour for regular hours worked by a server paid $2.13/hour, $4.12/hour for regular hours worked by a lead server paid $3.13/hour, $0.75/hour for regular hours worked by a

---

[3] Defendant provided its record/notice to all employees that it ended the two "tip out" requirements for oyster shuckers and expeditors effective January 20, 2014.

bartender paid $6.50/hour, and $0.25/hour for regular hours worked by a bartender paid $7.00/hour, and the corresponding overtime pay differentials of 1.5 times these rates for overtime work. With some exceptions, the offers made to Plaintiffs proposed to pay for all hours Defendant recorded and claimed a "tip credit" during the uncontested two year liability period[4] period without examining whether or not "tip outs" were paid to either oyster shuckers or expeditors by a particular server on a given shift.[5]

5. With respect to the claim seeking to recover the "tip credit" / "tip differential" for time spent on "side work", *i.e.,* work which was not directly tip generating, at the beginning of the server shifts before the restaurant opened and/or at the end of the server shifts, the parties acknowledge that Defendant's proposal to pay the tip credit differential for all hours Defendant recorded and claimed a "tip credit" during the uncontested two year liability period, regardless of the nature of the work performed, would necessarily include damages sought for the "non-tipped work" claim for those same shifts.

6. Defendant's time records showed Plaintiffs were normally scheduled less than forty (40) hours in a workweek and indicated employees were paid 1.5 times the reduced hourly rate for those weeks Defendant's records show Plaintiffs exceeded forty (40). Accordingly, parties agreed the nominal valuation of these claims was subsumed in the damages model paying employees the liquidated "tip differential" or "tip credit" amount for the uncontested two-year liability period. Parties recognized the evidentiary dispute the claim for allegedly unpaid or the

---

[4] That is, the two (2) years prior to the particular plaintiff's "opt-in" date.

[5] The first exception involves three Plaintiffs (Crystal Harden, Jude Sanford, and Kelly Stewart). Defendant also provided Plaintiffs' attorney copies of records of their acceptance of refunds of the "tip outs" paid to the oyster shuckers and "tip outs" paid to the expeditors from those particular Plaintiffs' tips. These payments were made after the present lawsuit was filed, and Plaintiffs agreed to deduct these refund amounts from the "tip credit" calculation. The second involves Plaintiff Shelli Barnes which was offered $1,000. Defendant provided records showing that Barnes did not work at all for Defendant during the two-year period prior to her opt in date, and thus her claims could be barred under FLSA two-year statute of limitations if it is determined that the three–year statute limitation period for willful violations does not apply.

"off-the-clock" time spent in the administration of the tip-out to others in the tip pool would lead to continued costly litigation. Defendant represented to Plaintiffs that the PAID-IN/PAID-OUT receipts determining the tip amounts to be paid into tip-pool or paid to non-tipped employees was captured and included in the employee detail records. Defendant represented that these records existed and could be located in this case but the undertaking would be quite time-consuming and expensive due to the number of records, the number of Plaintiffs involved, and the clock started if the offers were in fact valid Offers of Judgment. Parties recognized that the costs associated with the production, review of these records and/or potential testimonial evidence necessary for damage calculations would significantly increase litigation costs and potentially jeopardize the settlement amounts and delay payment of the offers made. Accordingly, parties agreed in the interest of settlement that a nominal valuation of these claims was added to damages model paying employees the liquidated "tip differential" or "tip credit" amount for the uncontested two-year liability period.

7. There remain disputes in this case as to whether Defendant "willfully" violated the wage-hour laws so as to expand the liability period to three years as opposed to the two year liability generally available under the FLSA, whether Plaintiffs performed substantial non-tip producing work rendering Defendant's claimed "tip credit" improper, whether the "tip credit" could be claimed for shifts in which Plaintiffs did not directly share tips with non-tipped employees, and whether Plaintiffs performed "work" as interpreted under the FLSA for which they did not receive compensation including unpaid overtime.

8. The Plaintiffs choosing to accept the amounts offered primarily because of the fact Defendant indicated it would seek costs pursuant to Rule 68 and the money offered was the maximum for uncontestable theories of recovery, and there were risks and costs attendant to

7

continued litigation that could jeopardize Plaintiffs' recovery of amounts equal or greater than those being offered to Plaintiffs.

9. Each settlement offer for these 26 claims states a total amount equaling the minimum wages and liquidated damages to be paid to each Plaintiff calculated as described above. The back pay will be paid subject to all applicable employee tax withholdings and payroll deductions. The liquidated damages will not be subject to tax withholdings and payroll deductions.

10. Plaintiffs' counsel has submitted an invoice to Defendant detailing costs, worked performed, hours spent, and rates for the time incurred up to the date of acceptance. Defendant agreed to pay a total of $42,937.50 for attorney's fees and expenses to the law firm of Wiggins, Childs, Quinn, & Pantazis, LLC, attorneys for Plaintiffs.

11. Defendant will make payments by hand delivery or regular U.S. mail to Plaintiffs' counsel. Plaintiffs are individually responsible for keeping Defendant informed concerning any changes in mailing addresses. The initial settlement payments and attorneys' fees will be made within 10 business days after the date of the Court's order approving settlement. The remaining payments will be mailed or delivered on the Defendant's last regular payday of each following month,[6] continuing until said payments are satisfied.

12. The parties maintain this settlement is fair and reasonable resolution of a bona fide FLSA dispute. Counsel for both parties are quite experienced in wage and hour litigation. They reviewed the evidence and the applicable law and have concluded that settlement of these claims is in the best interest of these certain twenty-six (26) Plaintiffs accepting Defendant's

---

[6] The phrase "Defendant's last regular payday of the month" means the last Friday of the month, unless that day falls on a holiday. For purposes of the payments, if the first payment is in July, then the next three payments will be on August 29, September 26, and October 31. If the first payment is in August, then the next three payments will be on September 26, October 31, and November 26, the Wednesday before Thanksgiving Day.

offers. They have recommended this settlement to their clients as a reasonable compromise of all the disputed issues of law and fact, and the parties agree.

WHEREORE, the foregoing premises considered, the parties respectfully request that the Court find that the terms of the proposed settlement as set forth in the revised "offers of judgment" and herein represent a fair and reasonable resolution of this dispute and dismiss these 26 Plaintiffs' claims from the lawsuit with prejudice and with leave to the parties, within five (5) months, to stipulate to a different basis for dismissal or to stipulate to the entry of a judgment instead of a dismissal, and with leave to any party to file, within five (5) months, a motion to have the dismissal set aside and the case reinstated or settlement enforced, should the settlement not be consummated. Furthermore, that the Court maintains jurisdiction over this cause of action so as to enforce settlement should it not be consummated.

Pursuant to the ECF Procedures Manual Section II.C.3., Plaintiffs' attorney consents to and authorizes Defendant's attorney to sign this joint motion and to submit it for electronic filing. Plaintiffs' attorney acknowledges that this motion is to be treated as if his original signature appears thereon.

| | |
|---|---|
| */s/ Daniel Arciniegas* | */s/ Scott Hetrick* |
| Daniel Eduardo Arciniegas | R. Scott Hetrick (HETRR5277) |
| Wiggins, Childs, Quinn, and Pantazis, LLC | ADAMS AND REESE LLP |
| 301 19th Street North | 11 North Water St., Ste.23200 |
| Birmingham, AL 35203 | Mobile, Alabama 36602 |
| Telephone (205)314-0577 | Telephone (251) 433-3234 |
| Email: dea@wcqp.com | Facsimile (251) 438-7733 |
| Attorneys for Plaintiffs | Email scott.hetrick@arlaw.com |
| | Attorneys for Defendant |